[No. F004915. Fifth Dist. Aug. 6, 1986.]

COLONIAL INSURANCE COMPANY OF CALIFORNIA,
Plaintiff, Cross-defendant and Respondent, v.
JOHN MONTOYA et al., Defendants and Appellants;
RICHARD GEORGE STANLEY et al.,
Defendants, Cross-complainants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

**COUNSEL**

George G. Logan for Defendants and Appellants.

Moore, Crawford, Stefanki & Block and John E. Stefanki for Defendants, Cross-complainants and Appellants.

Weintraub, Genshlea, Hardy, Erich & Brown, Lucinda C. Pocan and Sara A. Clark for Plaintiff, Cross-defendant and Respondent.

OPINION

HAMLIN, J.—

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant John Montoya's driver's license was suspended in January 1979 when he suffered his second drunk driving conviction. Upon expiration of his one-year suspension, the Department of Motor Vehicles (DMV) informed Montoya his license could be reinstated provided he established proof of liability insurance coverage as required by California's financial responsibility laws (Veh. Code, § 16000 et seq.). At that time, Montoya owned a Volkswagen in need of repairs, a 1968 Toyota, and was in the process of acquiring a 1964 Oldsmobile. The Volkswagen and Toyota were insured by the California State Automobile Association (CSAA). When Montoya requested proof of insurance from CSAA, his policy was canceled.

The Montoyas then shopped for the required insurance coverage. They found the lowest rates were offered by Colonial Insurance Company of California (Colonial) through the Lem Hill Insurance Agency.

On March 28, 1980, the Montoyas met Lem Hill and requested insurance coverage for the Toyota and Oldsmobile in the minimum amount required by California law for reinstatement of John Montoya's driver's license. The Montoyas informed Hill that they owned a Volkswagen, but that it was inoperative and they did not intend to insure it. The Montoyas were not knowledgeable about automobile insurance and relied on Hill's expertise. Colonial issued two policies to the Montoyas. Policy numbered KCB000551 (policy 551) listed only the Toyota as the insured vehicle. Montoya was charged a premium of $29, a $2 filing fee for the SR-22 (the document filed with the DMV by Colonial stating that it had insured the Montoyas in the minimum amount required by state law), plus a $20 policy processing fee for a total one-month premium of $51. The other policy, number KCB000552 (policy 552) insured the Oldsmobile at a premium of $15 (no filing or processing fees were charged).

Each policy had a declaration page which identified it as a "multi-car policy." The application form for each policy contained a section entitled "financial responsibility" with a space for the insureds' name and identification boxes for the type of policy being purchased. On the application for policy 551, Hill checked the box indicating an "owner's and operator's" policy. On the application for policy 552, the financial responsibility section identified John Montoya as the insured and the words "See Unit # 1" were inserted therein. No boxes were checked. By writing these words, Hill intended to incorporate into the second application the information from the financial responsibility section of the application for policy 551. Both policies had coverage of $15,000 per person, $30,000 per accident for bodily injury or death, and $5,000 for property damage.

After the policies were issued, Colonial filed one SR-22 certificate with the DMV verifying it had sold John Montoya policy 551 and that it was an owner's and operator's policy. Colonial representatives stated it was not their intent to issue a separate SR-22 certificate for policy 552 because they understood the one certificate told DMV that Colonial covers Montoya for any owned or nonowned vehicle he drives.

Colonial is a "substandard" insurer; that is, Colonial writes only automobile liability insurance policies for high-risk drivers. Consequently, premiums are higher than ordinary insurance policies. This causes Colonial to limit the term of their policies to 30-day periods in order to make payments affordable. As a result, premium notices and payments are processed 12 times per year. In order to minimize the potential of clerical error in this process, Colonial adopted the practice of issuing one policy per car. Dairyland Insurance Company, the largest writer of substandard automobile insurance in California, follows the same procedure.

On June 21, 1980, while the Colonial policies were in effect, John Montoya was involved in an automobile accident which resulted in personal injury to the Stanleys. Montoya was driving his Volkswagen when the accident occurred. Because he had not purchased insurance for the Volkswagen, he felt he had no coverage and therefore did not report the accident to Colonial.

Since Colonial had represented by issuance of the SR-22 certificate that insurance coverage of $15,000/$30,000/$5,000 had been extended to *all* owned vehicles, Colonial admitted coverage under policy 551 when the Stanleys filed suit against the Montoyas. Colonial paid $30,000, the policy limits, to the Stanleys for their injuries. However, Colonial refused to pay anything additional. On March 14, 1983, it filed suit in Merced County

Superior Court seeking a declaration that policy 552 did not provide coverage for liability arising out of the June 21, 1980, accident in that the 1965 Volkswagen John Montoya was driving was not an insured vehicle.

The Stanleys asserted coverage and raised the affirmative defense that Colonial was estopped to deny coverage. They also cross-complained for a declaration that policy 552 did provide coverage by operation of law even though it did not describe the Volkswagen as a covered vehicle. Finally, the Stanleys sought reformation of policy 552, based on constructive fraud, to reflect that the policy covered all vehicles owned or operated by the Montoyas.

The trial court issued a statement of decision and a judgment in favor of Colonial as requested in its complaint and against the Stanleys on their cross-complaint. John Montoya, Wanda M. Montoya, Richard George Stanley and Diana Stanley appeal.

DISCUSSION

I.

*Does Public Policy Require Implied Coverage?*

■ The Stanleys argue that since policy 552 was issued after Montoya's driver's license was suspended and the insurance issued by Colonial enabled Montoya to reinstate his driver's license, Colonial must be required to cover the Volkswagen under that policy because it was an additional vehicle owned by the insured. They point out that a driver who has his driving privileges suspended under Vehicle Code section 13352 has proven to be a danger to the public. Therefore, they assert, each insurance policy issued post-suspension must, as a matter of public policy, be deemed to be an "owner's policy" as set forth in Vehicle Code section 16451 of California's financial responsibility laws. Colonial counters that the Montoyas did not ask for, pay for, or expect coverage for, the Volkswagen. Public policy requires only that it provide insurance in the minimum amounts required—$15,000/$30,000/$5,000—for all vehicles owned by the Montoyas; it did that by paying the liability limit of $30,000 under policy 551.

To reinstate his suspended driver's license under the law in effect at the time, John Montoya was required to furnish DMV proof of his ability to respond in damages that might result from his ownership or operation of a motor vehicle in amounts of $15,000 for each person injured or killed, $30,000 for two or more persons injured or killed in any one accident, and

$5,000 damages to property. (Veh. Code, § 16430.) Pursuant to Vehicle Code section 16431, Montoya provided such proof by Colonial's SR-22 certificate that it had issued to Montoya a motor vehicle liability policy. The policy which Colonial certified as having been issued is defined in Vehicle Code section 16451 then in effect: "An owner's policy of motor vehicle liability insurance shall insure the person named therein and any other person, as insured, using any owned motor vehicle with the express or implied permission of said assured, against loss from the liability imposed by law for damages arising out of ownership, maintenance, or use of such motor vehicle within the continental limits of the United States to the extent and aggregate amount, exclusive of interest and costs, with respect to each motor vehicle, of fifteen thousand dollars ($15,000) for bodily injury to or death of each person as a result of any one accident and, subject to said limit as to one person, the amount of thirty thousand dollars ($30,000) for bodily injury to or death of all persons as a result of any one accident and the amount of five thousand dollars ($5,000) for damage to property of others as a result of any one accident." Sections 16451 and 16430 reflect public policy designed to "'*give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury* through the negligent use of those highways by others.'" (*Bonfils* v. *Pacific Auto. Ins. Co.* (1958) 165 Cal.App.2d 152, 156 [331 P.2d 766], italics in original.) The Legislature determined, after balancing all the considerations involved, that the $15,000/$30,000/$5,000 coverage was the minimum required even though those sums may in some cases be inadequate to compensate for the injuries suffered.

In the instant case, policy 551, the policy described in the SR-22 filed for John Montoya, stated that it was an "owner's and operator's" policy. Policy 551 covered the Toyota and stated that this was one of two vehicles insured. Policy 552, which covered the Oldsmobile, did not state it was an "owner's and operator's" policy. The application for policy 552 contained the notation at the top that it was for "Multi-Car # 1 of 2."

When Montoya struck the Stanleys' vehicle while driving his Volkswagen, not specifically listed as insured, Colonial was obligated under policy 551 and the SR-22 it filed to provide coverage for the resulting injuries to the extent of the $15,000/$30,000/$5,000 minimum required by law. Colonial's satisfaction of this obligation fulfilled the public policy of the financial responsibility laws. (See Veh. Code, § 16430 et seq.)

Under the facts of this case, there is no functional difference between the two policies issued by Colonial and one policy listing multiple vehicles

which would have been issued by most other insurers. Montoya was charged a premium for the Toyota on policy 551 ($29) and a lesser premium for the second car on policy 552 ($15). Moreover, Montoya was charged only one processing fee ($20) and one filing fee for the SR-22 ($2) as would happen if there had been only one policy issued.

We are not persuaded by appellants' argument that public policy requires that *all policies issued after suspension of the driver's license of the insured* should be deemed to provide the coverage of an owner's policy as defined in Vehicle Code section 16451. The cases on which appellants rely to support their argument are *Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31 [307 P.2d 359] and *State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.* (1970) 9 Cal.App.3d 508 [88 Cal.Rptr. 246]. This reliance is misplaced.

As the court in *State Farm Mut. Auto Ins. Co., supra,* pointed out, in 1963 the Legislature added section 11580.1 to the Insurance Code and amended Vehicle Code section 16450. (Stats. 1963, ch. 1259, § 3, p. 2781.) Insurance Code section 11580.1 enumerated mandatory and permissible provisions of automobile liability policies issued or delivered in this state. The enumeration duplicated in part, and in part diverged from, the financial responsibility provisions of Vehicle Code sections 16450 and 16451. Only section 16451 required coverage of any owned vehicle.

The court then stated: "Standing alone, section 11580.1 bespeaks an intent to gather to itself all the public policy concerns which had been expressed in *Wildman* and its successors, an intent to stand as the exclusive enumerator of required automobile coverage features *before* an accident. Such an intent would inferably confine Vehicle Code sections 16450-16451 to policies posted as proof of financial responsibility *after* an accident.

"Moreover, the Legislature did not leave this statutory objective to the hazards of judicial inference. A 1957 amendment to former section 415 had added a phrase (now appearing in the first sentence of Veh. Code, § 16450, fn. 9, *supra*) designed to confine its demands to those policies certified under the financial responsibility law. (See *American Auto. Ins. Co.* v. *Republic Indem. Co.* [(1959)] 52 Cal.2d [507, 511 [341 P.2d 675]].) The 1963 amendment now added the last sentence to section 16450 (fn. 9, *supra*), in effect reiterating the confinement of sections 16451 and 16452 to those insurance policies certified to the Department of Motor Vehicles under the financial responsibility law, implicitly but firmly foreclosing their application to voluntary insurance sold on the general market. (See Note, *Cal-*

*ifornia Financial Responsibility Law—A Judicial Interpretation* (1969) 20 Hastings L.Rev. 1273; Comment, *The Pacific Case* (1967) 2 U.S.F. Law Rev. 120.)

". . . . . . . . . . . . . . . . . . . . . .

". . . In assessing the impact of statutory restrictions on that freedom, the judicial function is to ascertain and fulfill the statutory objective, not to fill omissions. (*Wisdom* v. *Eagle Star Ins. Co.* [(1963)] 211 Cal.App.2d [602, 605 [27 Cal.Rptr. 599]].) If Vehicle Code sections 16451-16452 are viewed solely as a set of 'second accident' demands, aimed only at policies certified under the financial responsibility law, then Insurance Code section 11580.1 becomes the sole statutory expression of public policy as to automobile policies sold on the general market. It is difficult to conceive of separate public policies imposing different shapes on identical merchandise—one expressed by the Legislature in Insurance Code section 11580.1, the other established by a judicial policy incorporating the demands of Vehicle Code sections 16451-16452." (*State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co., supra,* 9 Cal.App.3d at pp. 525-526, fn. omitted.)

Under *State Farm Mut. Auto. Ins. Co., supra,* Colonial could limit coverage in policy 552 to the described vehicle—the 1964 Oldsmobile—unless that policy is one certified to DMV under the financial responsibility law.[1] Since policy 551 was the only policy mentioned in the single SR-22 certificate filed with DMV, section 16451 was not an implied provision of policy 552.

The Legislature reasonably considered one whose license has been suspended to present a greater risk to other users of the highways and for that reason required proof of ability to respond in damages as a condition precedent to reinstatement. However, the suspended licensee cannot reasonably be considered to present any greater risk because he owns more than one vehicle or because his minimum insurance is provided under more than one policy. Thus the legislative purpose of requiring proof of ability to respond in damages was satisfied by the issuance of one owner's liability policy covering any vehicle driven by the insured with at least the minimum coverage to permit the filing of the SR-22 certificate of insurance pursuant to Vehicle Code section 16431.

---

[1] Insurance Code section 11580.1, subdivision (b)(2), as it read at the time Colonial forwarded its SR-22 certificate to the DMV, and at the time John Montoya struck the Stanleys' vehicle while driving his Volkswagen, specifically permitted vehicle coverage only for designated vehicles.

## II.

*Should Policy 552 Be Interpreted to Cover the Insured's Undescribed Vehicle*

The Stanleys contend that if their public policy argument is rejected, this court must still examine policy 552 to determine whether coverage thereunder is limited to the Oldsmobile. If not, and it could reasonably be interpreted to include coverage for the Volkswagen, they are entitled to a reversal of the judgment.

Specifically, the Stanleys urge that policy 552 is ambiguous because the declarations page contains the notation that it is a "Multi/Car Policy" and at the bottom of the page it states, "This policy covers only the vehicle described in item 5 [the Oldsmobile]." They then argue that the ambiguity of whether a single vehicle or multiple vehicles are covered must be resolved against the insurer; if doubt exists on the extent or fact of coverage, the language must be construed in its most inclusive sense for the benefit of the insured. (*Healy Tibbitts Constr. Co.* v. *Employers' Surplus Lines Ins. Co.* (1977) 72 Cal.App.3d 741, 749 [140 Cal.Rptr. 375, 97 A.L.R.3d 1258].) Colonial counters that there is no ambiguity because the description "Multi-Car Policy" was clarified by looking at the rest of policy 552, which expressly limited coverage to the Oldsmobile. The trial court found an ambiguity when the application for both policies and SR-22 were considered together and admitted testimony from Colonial's employees and the Montoyas, evaluated all relevant documents, and concluded that policy 552 was not intended to be a "motor vehicle liability policy" as the term is used in Vehicle Code section 16450.

■ The determination of whether a written instrument is ambiguous is a question of law. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) As such, an appellate court independently reviews the instrument to determine whether there is an ambiguity. (*Ponder* v. *Blue Cross of Southern California* (1983) 145 Cal.App.3d 709, 717 [193 Cal.Rptr. 632].) ■ In making such a determination, Civil Code section 1642 provides that: "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." (See also *Kuffel* v. *Seaside Oil Co.* (1970) 11 Cal.App.3d 354, 368 [90 Cal.Rptr. 209]; *Malmstedt* v. *Stillwell* (1930) 110 Cal.App. 393, 398 [294 P. 41].)

We review policy 552 in light of those principles. Typed on the declaration page of that policy was the notation that it was a "Multi-Car Policy." At the bottom of the page, there was the express statement that "This policy covers only the vehicle described in item 5," and the only vehicle described in item 5 is the 1964 Oldsmobile. What might otherwise be considered an ambiguity is resolved when we look at the total transaction. Policy 551 covering the Montoyas' Toyota was issued at the same time for the same month as policy 552, and as a result of the same discussions about insurance between the Montoyas and Colonial. Policy 551 contained the same typed statement on the declaration page that it was a "Multi-Car Policy" and the same statement at the bottom of the page that it covered only the vehicle described in item 5. In that policy the only vehicle described in item 5 was the 1968 Toyota.

Policy 551 reflected a $20 policy fee and a $2 filing fee. No such charges were shown on policy 552. The premium charged for policy 551 was greater than that for policy 552. Moreover, the application for policy 552 had two sections providing for background information which had written on it "See Unit # 1." At the top of application 552 there was written "Multi-Car # 2 of 2." The description "2-Car Policy" appears at the bottom of the application. Similarly, the application for policy 551 included the notation at the top that it was a "Multi-Car # 1 of 2" and at the bottom appeared the notation "2 Car Policy."

After reviewing all these documents together, as we must under Civil Code section 1642 and applicable case law, we conclude that policy 552 was designed to cover only the Oldsmobile and was part of a transaction intended to result in the issuance of policy 551 covering the Toyota. While they were separate contracts, they were all part of one transaction. There is no ambiguity as to the coverage provided by each policy. Thus, we reject Stanleys' contention that policy 552 was ambiguous and must be interpreted to extend coverage on the Volkswagen. If the trial court erred in admitting evidence of the parties' intent in order to resolve an ambiguity, it was necessarily harmless error in view of our conclusion that there was no ambiguity to resolve. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

III.*

*Is There Evidence of Constructive Fraud or Mistake to Justify Reformation or Estoppel?*

. . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 74.

The judgment is affirmed.

Hanson (P. D.), Acting P. J., and Papadakis (V. N.), J.,* concurred.

The petition of defendants, cross-complainants and appellants for review by the Supreme Court was denied November 19, 1986.

*Assigned by the Chairperson of the Judicial Council.