Filed 7/28/14  Wright v. Tufft CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| LINDA A. WRIGHT,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MARGARET ELIZABETH TUFFT,<br><br>    Defendant and Respondent. | H039714<br>(Santa Cruz County<br>Super. Ct. No. PR045947) |

## I.  INTRODUCTION

James David Tufft and Mary Louise Tufft,[1] a married couple, executed a revocable trust in 1997.  They were co-trustees of the trust and they signed the trust instrument in that capacity.  All the property transferred to the trust was James's separate property, and James alone signed the trust instrument as grantor.  James and Mary had no children together during their marriage.  At the time the trust was executed, it provided that if no successor trustee was appointed prior to the death of the surviving spouse, then James's two daughters, including respondent Margaret Elizabeth Tufft, would be appointed successor co-trustees.  James's two daughters were also named as beneficiaries

---

[1] For clarity and convenience, we will refer to James David Tufft and Mary Louise Tufft by their first names.  We will also refer to Mary's daughter, appellant Linda A. Wright, and James's daughter, respondent Margaret Elizabeth Tufft, by their first names for clarity and convenience.

of the trust estate after he and Mary died. The trust further stated that Mary's three daughters, including appellant Linda A. Wright, would receive nothing from the trust estate.

James died in 2002. Shortly before Mary's death in 2012, Mary executed a purported amendment to the trust, changing the provisions concerning the successor trustee and the beneficiaries. The purported amendment states that Mary's daughter Linda shall be appointed as the sole successor trustee upon Mary's death. The purported amendment also provides that two of Mary's three daughters, including Linda, are entitled to distributions of the trust estate, but that James's surviving daughter Margaret and Mary's third daughter shall not receiving anything.

After Mary's death, Linda filed a petition seeking to be appointed successor trustee and to retain the right to determine all claims and rights to distribution under the trust. Margaret demurred to the petition on the ground, among others, that the purported amendment by Mary, which changed the provisions concerning beneficiaries and the successor trustee, was void. The probate court sustained Margaret's demurrer without leave to amend. A judgment of dismissal was subsequently filed.

On appeal, Linda contends that the probate court erred in sustaining the demurrer without leave to amend, and by improperly including certain findings in the judgment in violation of her constitutional due process rights.

For the reasons stated below, we determine that the probate court properly sustained the demurrer without leave to amend. After striking one of the findings in the judgment, we will affirm the judgment as modified.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Trust*

In January 1997, the James and Mary Louise Tufft Living Trust was established. James and Mary were co-trustees of the trust, and they signed the trust instrument in that capacity.

2

In addition to signing the trust instrument as one of the two trustees, James also signed it as "Grantor."[2] At the time the trust was established, all the property transferred to the trust and identified on an attached "Schedule 'A' " – Chevron stock and residential property located in Felton and Albany – was James's separate property. According to the trust instrument, the property was "delivered to [James and Mary] as Co-Trustees by James David Tufft as Grantor, without consideration." (Capitalization omitted.) The trust instrument further states: "Separate Property. All property being transferred to this Trust, and identified on Schedule 'A' as the Separate Property Trust Estate, is the separate property of JAMES DAVID TUFFT. It is the express intention of the parties that said property retain its character as the separate property of the undersigned Grantor unless and until title to any such property should hereafter be changed by written instrument."

James and Mary were to be paid periodically net income of the trust estate during their lifetimes, and the payments were to continue during the lifetime of the surviving spouse. If the net income was "insufficient," principal could also be paid as "necessary."

The trust instrument provides that, upon the death of the surviving spouse, and after the payment of all debts, taxes, and other obligations, the remaining balance of the trust estate will be distributed to James's two daughters, including Margaret.[3] If either daughter dies before the surviving spouse dies, and the daughter has no lineal descendant surviving, then the entire trust estate will be distributed to the surviving daughter.

The trust instrument expressly provides that Mary's three daughters, including Linda, will not receive anything under the trust.

---

[2] Although the term "grantor" but not "settlor" is used in the trust instrument, the parties on appeal agree that the terms may be used interchangeably in this case.

[3] In the trust instrument, typewritten references to Margaret Elizabeth "Odendaal" are modified by handwriting to state Margaret Elizabeth "Tufft." James and Mary appear to have signed their names in the margin next to each modification.

The trust instrument provides that upon the death of James or Mary, the surviving spouse will act as sole trustee and will continue to administer the trust estate. The trust instrument also provides for the appointment of a successor trustee under various circumstances.

Regarding revocation and amendment, the trust instrument provides that during James's lifetime, he may amend or revoke the trust in whole or in part.

**B.** *The Purported Amendment to the Trust*

On June 4, 2012, Mary executed the purported amendment to the trust. Both the purported amendment and the original trust instrument were prepared by the same attorney. The purported amendment states that it "revoked" and "replaced" the paragraphs providing for the distribution of the trust estate to James's daughters and the disinheritance of Mary's daughters. The new paragraphs instead provide that two of Mary's daughters, including Linda, are entitled to distributions, but that Mary's third daughter and James's daughter shall not "receive anything." Specifically, $1,000 shall be distributed to one of Mary's daughters if she survives her mother Mary, and if not, the gift lapses. "Thereafter, the entire residue of the Trust Estate shall be distributed to Linda Wright." (Some capitalization omitted.)

The purported amendment also states that it "revoked" and "replaced" the paragraph concerning the designation of a successor trustee. Pursuant to the original trust, James's two daughters are appointed as successor co-trustees in the event that a successor trustee is not appointed prior to the death of the surviving spouse. Under the purported amendment, the new paragraph instead provides that Mary's daughter Linda "shall be appointed as the sole Successor Trustee" upon the death of Mary, and that one of Mary's other daughters shall serve as successor trustee to the extent Linda is unable or declines to act in that capacity.

The purported amendment states that in all other respects, the trust shall remain in force and effect. Mary signed the purported amendment as "Trustee" and "Grantor."

4

## C. *Linda's Petition Under Probate Code Section 17200*

In March 2013, Linda filed a petition under Probate Code section 17200[4] seeking to be appointed successor trustee of the trust established by her mother Mary and her mother's husband James. According to the petition, Mary and James had no children together during their marriage. James died in 2002. James had two adult daughters living at the time of his death: Margaret and another daughter who later died in 2004 without issue.

The petition alleged that after James died, Mary executed an amendment to the trust on June 4, 2012. The amendment provided that upon Mary's death, her daughter Linda would be appointed as the sole successor trustee. Mary died on August 3, 2012. At the time of her death, Mary had two other adult daughters besides Linda. Linda alleged that she had "served many of the medically related and personal needs of James until his death," and that at her mother's request Linda had "moved into the family home in Felton to assist and provide care" until her mother's death.

According to Linda's petition, James's daughter Margaret had asserted that she was the successor trustee pursuant to the original trust instrument because the trust became irrevocable after her father's death and the trust amendment naming Linda was a "nullity." Linda alleged, however, that paragraph 6.2 of the original trust instrument showed that James and Mary "intended that the survivor of them would have the authority to appoint a Successor Trustee." Linda prayed for an order of the probate court that the trust "as amended is established within the jurisdiction of Santa Cruz County Superior Court with powers confirmed under Probate Code § 17200, appointing [Linda] as Successor Trustee of the trust, and retaining rights to determine all claims and rights to

---

[4] All further statutory references are to the Probate Code unless otherwise indicated.

distribution under the trust." The exhibits attached to the section 17200 petition included copies of the trust instrument and the purported amendment.

**D.** *Margaret's Demurrer*

James's daughter Margaret filed a demurrer to Linda's section 17200 petition. Margaret contended that (1) the probate court had no jurisdiction over the subject matter of the petition because Linda had "no right, title or interest" in the trust either as trustee or beneficiary, (2) Linda failed to state facts sufficient to constitute a cause of action, and (3) Linda lacked standing to sue because she was not a trustee of the trust. Margaret's arguments in support of each ground were the same. According to Margaret, paragraph 5.2 of the trust instrument expressly provides that the trust is irrevocable after James's death. Therefore, any purported amendment or change to the trust after James's death, including any purported substitution of trustee, was void and had no legal effect. Based on the language of the original trust instrument, Margaret contended that she was the successor trustee. Margaret also argued that paragraph 6.2 in the original trust instrument did not give Mary the authority to change the successor trustee to Linda, as that paragraph addressed the resignation of one or both trustees and there was no allegation in the petition that any trustee had resigned.

In opposition to the demurrer, Linda contended that pursuant to paragraph 5.2 of the trust instrument, the trust did not become irrevocable until after the death of the surviving spouse Mary. Linda further contended that even if the trust was irrevocable after James's death, Mary as the surviving spouse retained the power to designate a successor trustee pursuant to paragraph 6.2 of the original trust instrument.

In reply, Margaret argued that James had contributed his separate property to the trust, he was the sole grantor, and he had executed the trust instrument in that capacity. Further, pursuant to paragraphs 5.1 and 5.2 of the trust instrument, only James had the power to revoke or amend the trust, and the trust became irrevocable upon his death. At the time of James's death, the trust instrument provided that James's daughters would

6

receive all of the trust assets, that his daughter Margaret was a successor trustee, and that Mary's daughters would not receive anything from the trust. Margaret contended that James's intent was "abundantly clear" in the trust instrument with respect to the distributions to his daughters, the purported amendment would directly contradict his intentions, and therefore the trust instrument could not be construed in the manner suggested by Linda. Margaret also contended that Mary was precluded from modifying or revoking the trust instrument by section 15402 and the version of section 15401 in effect at the time of her death.

### E. The Court's Order Regarding Margaret's Demurrer

A hearing was held on Margaret's demurrer. At the beginning of the hearing, the probate court announced its tentative decision to sustain the demurrer without leave to amend. The court believed that the Probate Code "limit[ed] the ability of a nonsettlor to amend the dispositive provisions of the trust." The court stated that although Mary "may be able to appoint a successor trustee," she may not "amend the dispositive provisions because it's separate property and the trust gave James Tufft and only James Tufft the power to amend or revoke." The court stated that "[u]nder Probate Code Section 15400, unless a trust is expressly made irrevocable by the trust instrument, the trust is revocable by the settlor and therefore any provision that's purported to give different powers" is not "appropriate."

Linda contended that Margaret's demurrer pertained only to the issue of the appointment of a successor trustee, and that the court had just indicated that a successor trustee could perhaps be appointed, but that a dispositive provision change could not be made.

Margaret disagreed with the characterization of her demurrer. She argued that the demurrer was to the petition, "which not only sought . . . [a] trustee but . . . with rights to determine distribution of [the] trust estate."

7

Linda acknowledged that she was seeking the entire trust estate. She further indicated that she wanted an opportunity to brief the issue of section 15400.

The court indicated that it did not "need to be briefed . . . ." The court believed Linda's opposition had already addressed the issue of whether someone other than the grantor can amend the dispositive provisions of the trust, and that the court was making the finding that only the grantor can do so.

Linda indicated that the Probate Code had been amended "to expressly state that power may be given to a spouse or a third person," and that the question was whether the amendment was only a "clarification of prior law" or actually a "change to prior law." Linda sought the opportunity to brief the issue of whether the amendment governed the instant case.

Margaret contended that the statutory change was not effective until after Mary had died. Margaret further contended that the trust instrument did not give Mary the power to change the successor trustee after the grantor's death. Margaret also agreed with the court that under the Probate Code, Mary could not change the dispositive provisions of the trust instrument because she was not a grantor.

The probate court reiterated that Mary might have had the power to change the trustee but that the issue before the court appeared to be whether the trust was irrevocable on James's death. Linda indicated that both matters were at issue. She asserted that even if the trust was irrevocable at James's death, "the power to declare a successor trustee was expressly reserved." Linda argued that, "To the extent that an irrevocable trust expresses the intention of the grantor to allow for changes in the trust by anyone after the death of the grantor, this is the intention of the grantor and the trust is irrevocable to that extent."

Margaret responded that paragraph 6.2 of the original trust instrument did not permit Mary to appoint a successor trustee after James's death. Linda disagreed with that interpretation of paragraph 6.2, and contended that the reference to "surviving spouse" in

the paragraph implied that Mary, as the surviving spouse, had the power to appoint a successor trustee after James's death.

The probate court indicated that it was going to adopt its tentative ruling and sustain the demurrer without leave to amend. The court further indicated that it disagreed with Linda with respect to section 15400, and that it would not allow briefing from Linda on the issue.

By written order filed May 14, 2013, the probate court sustained the demurrer "on all grounds without leave to amend."

**F.** *The Judgment*

Margaret prepared a proposed judgment and served a copy on Linda. The probate court filed the judgment on June 12, 2013, without any modification. The judgment states:

"The Court, having made its Order sustaining Respondent's Margaret Elizabeth Tufft's Demurrer to the Linda A. Wright's Petition to Establish Jurisdiction, Designate Trustee, and Determine Rights of Distribution of Trust Estate, and finding good cause therefore, hereby orders, adjudges and decrees:

"1.     Petitioner Linda A. Wright's claim that she is the Successor Trustee of the James and Mary Louise Tufft Living Trust dated January 2, 1997 is rejected by the Court;

"2.     Petitioner Linda A. Wright has no right to determine any claims or rights to distribution under James and Mary Louise Tufft Living Trust dated January 2, 1997;

"3.     Respondent Margaret Elizabeth Tufft is the Successor Trustee of the James and Mary Louise Tufft Living Trust dated January 2, 1997, with the right to exercise all powers granted to the Trustee in said Trust;

"4.     Linda A. Wright's Petition to Establish Jurisdiction, Designate Trustee, and Determine Rights of Distribution of Trust Estate is dismissed with prejudice; and

"5.     Respondent Margaret Elizabeth Tufft is awarded costs."

9

**G.** *Margaret's Motion to Expunge Linda's Notices of Pendency of Action*

While the demurrer to Linda's petition was pending, Linda recorded a notice of pendency of action (lis pendens) on the Albany property and the Felton property. After the probate court sustained the demurrer without leave to amend, Margaret filed a motion to expunge the notices. In the motion, Margaret contended that Linda did not have a real property interest in the properties in view of the court's ruling on the demurrer to Linda's petition.

The probate court ultimately granted the motion. The probate court's June 26, 2013 order states that the notice of action that was recorded in or about April 2013 on the Albany property and the Felton property is expunged on the grounds that Linda's petition "does not contain a real property claim under Code of Civil Procedure §405.31."

## III. DISCUSSION

Linda appeals from the June 12, 2013 judgment entered after the probate court sustained the demurrer to her section 17200 petition without leave to amend.[5] Linda contends that the court erred in sustaining Margaret's demurrer without leave to amend. Linda also contends that the court erred by improperly including certain findings in the judgment in violation of her constitutional due process rights.

**A.** *Demurrer*

Before considering the substance of Linda's arguments concerning the demurrer ruling, we first set forth the principles governing a demurrer and the standard of review.

---

[5] On May 24, 2013, Linda filed a notice of appeal from the May 14, 2013 order sustaining the demurrer without leave to amend (H039714). Subsequently, on July 2, 2013, she filed a notice of appeal from the June 12, 2013 judgment that was entered after the demurrer was sustained (H039835). By order dated April 16, 2014, this court on motion of Margaret dismissed the second appeal (H039835) as duplicative of the first appeal (H039714). By the same order, this court on its own motion deemed the notice of appeal in the first appeal (H039714) filed as of June 12, 2013, the date of the judgment.

In addition, because Margaret's demurrer raised issues concerning the proper construction of the trust, we set forth the rules governing the interpretation of a trust.

### 1. Legal principles governing a demurrer

We will assume that a section 17200 petition is subject to demurrer. (See § 1000 [except to the extent the Probate Code provides applicable rules, the rules of practice applicable to civil actions apply to Probate Code proceedings].) On appeal from a judgment of dismissal after a demurrer is sustained without leave to amend, the standard of review is de novo. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) In performing our independent review of the pleading, we assume the truth of all facts properly pleaded by the plaintiff. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 (*Evans*).) " 'We also accept as true all facts that may be implied or inferred from those expressly alleged. [Citations.]' [Citation.]" (*Guerrero v. Superior Court* (2013) 213 Cal.App.4th 912, 925.) Further, "we give the complaint a reasonable interpretation, and read it in context." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).) But we do not assume the truth of " ' "contentions, deductions or conclusions of fact or law." ' " (*Evans*, *supra*, 38 Cal.4th at p. 6.)

"We also consider the complaint's exhibits. [Citations.] Under the doctrine of truthful pleading, the courts 'will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents . . . .' [Citation.] 'False allegations of fact, inconsistent with annexed documentary exhibits [citation] . . . , may be disregarded . . . .' [Citations.]" (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400.)

"If the trial court has sustained the demur[r]er, we determine whether the complaint states facts sufficient to state a cause of action." (*Schifando*, *supra*, 31 Cal.4th at p. 1081.) "We will affirm the court's ruling if it is correct under any legal theory raised in the demurrer, whether the court relied on the theory or not. [Citation.]" (*Debro*

11

*v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940, 946; see Code Civ. Proc. § 472d [if a demurrer is sustained, the court must include in its decision or order a statement of the specific ground or grounds upon which the decision or order is based].)

Additionally, "[i]f the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]" (*Schifando*, *supra*, 31 Cal.4th at p. 1081.)

## 2. Rules of trust interpretation

"A trust is created by a manifestation of intention of the settlor to create a trust, trust property, a lawful trust purpose, and an identifiable beneficiary. [Citations.]" (*Chang v. Redding Bank of Commerce* (1994) 29 Cal.App.4th 673, 684.) Section 17200 authorizes a trustee or beneficiary of a trust to petition the probate court "concerning the internal affairs of the trust." (§ 17200, subd. (a).) Proceedings concerning the internal affairs of a trust include those proceedings determining "questions of construction of a trust instrument," "[d]etermining the validity of a trust provision," "[a]scertaining beneficiaries and determining to whom property shall pass or be delivered upon final or partial termination of the trust, to the extent the determination is not made by the trust instrument," "[i]nstructing the trustee," "[g]ranting powers to the trustee," "[a]ppointing or removing a trustee," and "[a]pproving or directing the modification or termination of the trust." (*Id.*, subd. (b)(1), (3), (4), (6), (8), (10), & (13).) The proceeding "is commenced by filing a petition stating facts showing that the petition is authorized under this chapter. The petition shall also state the grounds of the petition . . . ." (§ 17201.)

" '[T]he primary rule in construction of trusts is that the court must, if possible, ascertain and effectuate the intention of the trustor or settlor.' [Citation.] 'The intention

of the transferor as expressed in the [trust] instrument controls the legal effect of the dispositions made in the instrument.' [Citations.] 'The nature and extent of the rights retained by the trustor are to [be] measured by the four corners of the instrument.' [Citation.]" (*Crook v. Contreras* (2002) 95 Cal.App.4th 1194, 1206 (*Crook*).) "The words of an instrument are to receive an interpretation that will give every expression some effect, rather than one that will render any of the expressions inoperative." (§ 21120; see § 21101.) "All parts of an instrument are to be construed in relation to each other and so as, if possible, to form a consistent whole. If the meaning of any part of an instrument is ambiguous or doubtful, it may be explained by any reference to or recital of that part in another part of the instrument." (§ 21121.)

"[E]xtrinsic evidence as to the circumstances under which a written instrument was made is admissible to interpret the instrument, although not to give it a meaning to which it is not reasonably susceptible. [Citation.]" (*Ike v. Doolittle* (1998) 61 Cal.App.4th 51, 73 (*Ike*).) "The interpretation of a . . . trust instrument presents a question of law unless interpretation turns on the credibility of extrinsic evidence or a conflict therein. [Citations.]" (*Burch v. George* (1994) 7 Cal.4th 246, 254, fn. omitted.)

"An ambiguity in a written instrument exists when, in light of the circumstances surrounding the execution of the instrument, ' "the written language is fairly susceptible of two or more constructions." [Citations].' [Citation.]" (*Ike*, *supra*, 61 Cal.App.4th at p. 74.) Whether the instrument is ambiguous is a question of law, and an appellate court independently reviews the instrument to determine whether ambiguity exists. (See *Colonial Ins. Co. v. Montoya* (1986) 184 Cal.App.3d 74, 82 (*Colonial*).)

If a trust provision is ambiguous, it may be necessary for the plaintiff to allege the plaintiff's own construction of the provision. (See *Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 239.) If that construction is not clearly erroneous, then in considering the sufficiency of the pleading, we must accept as correct the plaintiff's allegations as to the meaning of the instrument. (See *ibid.*)

13

### 3. Analysis

#### a. *successor trustee*

Linda contends that Mary had the authority to appoint a successor trustee after James's death based on paragraphs 6.2 and 6.3 of the original trust instrument. Linda argues that Mary "[e]xercis[ed] her rights" under those paragraphs by appointing Linda as successor trustee "via the June 4, 2012 Amendment."

Margaret argues that "there were very limited situations where a successor trustee could be appointed" under the trust instrument, and that Linda's petition did not allege those situations.

"A trustee's powers include those specified in the trust instrument, those conferred by statute, and those needed to satisfy the reasonable person and prudent investor standards of care in managing the trust. [Citations.]" (*Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1129, fn. omitted (*Moeller*).) "Thus, in general, trustees are bound by the terms of the trust and possess only that authority conferred upon them by the trust. [Citations.]" (*Crocker-Citizens National Bank v. Younger* (1971) 4 Cal.3d 202, 211 (*Crocker-Citizens National Bank*).)

In this case, article VI of the trust instrument contains provisions concerning trustees. Paragraph 6.1 appoints James and Mary as co-trustees and provides that, "[u]pon the death, incompetency, or resignation of either of them, the other shall act as sole Trustee."

Paragraphs 6.2 and 6.3 of the trust instrument state:

"6.2. Designation of Successor Trustees. At any time during the spouse's lifetimes, either of them may resign in favor of the other, or both of them may resign and appoint as successor Trustee any adult person or corporate fiduciary that the Grantor may select. In the event that a successor Trustee shall not have been appointed prior to the death or disability of the Surviving Spouse, then MARGARET ELIZABETH TUFFT and [James's other daughter] shall be appointed as successor Co-Trustees. Should either of

14

them be unable, or decline to act in that capacity, for any reason, or resign after appointment, the other shall act as sole successor Trustee.

"6.3. Removal of Trustee. At any time after the death of the first spouse to die, the Surviving Spouse may remove any Trustee acting under this instrument and appoint a successor Trustee. Removal shall be effected by written instrument delivered personally or by certified mail to the Trustee and its successor, and by written notice of acceptance given by the successor Trustee personally or by registered mail to the Surviving Spouse. After acceptance by the successor Trustee, the former Trustee shall, within a reasonable period, deliver all Trust assets in its possession to the successor Trustee, together with an accounting for all acts affecting the Trust since the date of any prior accounting."

To the extent these paragraphs set forth circumstances under which a successor trustee may be appointed, such as the circumstances of the resignation or removal of a trustee, none of those circumstances were alleged in Linda's petition. Rather, Linda's petition alleged that James died, that Mary subsequently signed an amendment appointing Linda as sole successor trustee upon Mary's death, and that Mary thereafter died. Linda does not identify any provision in the trust instrument expressly authorizing Mary to appoint a successor trustee under these circumstances alleged in her petition.

In her petition, Linda alleged that the second sentence of paragraph 6.2 "confers maximum support for the concept that James and Mary intended that the survivor of them would have the authority to appoint a Successor Trustee."

The second sentence states: "In the event that a successor Trustee shall not have been appointed prior to the death or disability of the Surviving Spouse, then MARGARET ELIZABETH TUFFT and [James's other daughter] shall be appointed as successor Co-Trustees." We do not believe that this sentence *gives* the surviving spouse the power to appoint. Rather, the sentence identifies the successor co-trustees in the event that *no successor trustee* has been appointed by the time of the surviving spouse's death. To determine whether the surviving spouse has the power to appoint a successor

15

trustee in a particular circumstance and whether that power was properly exercised, the other provisions of the trust instrument must be considered. (See *Moeller*, *supra*, 16 Cal.4th at p. 1129; *Crocker-Citizens National Bank*, *supra*, 4 Cal.3d at p. 211.) As we have just explained, Linda fails to identify any provision in the trust instrument authorizing Mary to appoint a successor trustee based on the circumstances alleged in her petition, where James died and Mary thereafter signed an amendment appointing Linda as sole successor trustee upon Mary's death.

### b. *revocation and modification*

Linda also contends that the trust did not become irrevocable until after the death of the surviving spouse Mary, and therefore Mary could amend the trust after James's death. Linda further contends that Mary was a settlor of the trust and that therefore she had the power to revoke or modify the trust. Linda also argues that paragraph 4.1 gave Mary "the authority to change the disposition of the entire Trust res."

Margaret contends that James was the sole settlor of the trust, and that at the time of Mary's death, sections 15401 and 15402 gave only the settlor the power to revoke or modify the trust. Margaret also argues that the trust became irrevocable upon James's death pursuant to paragraph 5.2, and therefore Mary's purported amendment thereafter was "void and of no legal effect." Margaret further argues that James's intent, including that Margaret would be successor trustee and that Linda was disinherited, is expressly reflected in the trust instrument, and that the purported amendment executed by Mary contradicts James's intent.

A trust is revocable by the settlor unless the trust "is expressly made irrevocable by the trust instrument." (§ 15400.) A trust that is revocable by the settlor may be revoked, in whole or in part, by any method provided in the trust instrument. (§ 15401, subd. (a)(1); *King v. Lynch* (2012) 204 Cal.App.4th 1186, 1190 (*King*).) A revocable trust may also be revoked by a writing, other than a will, signed by the settlor and delivered to the trustee, "unless the method of revocation provided in the trust instrument

16

is explicitly exclusive." (*King*, *supra*, at p. 1190; see § 15401, subd. (a)(2).) Moreover, unless the trust instrument provides otherwise, the settlor may modify a revocable trust by the procedure for revocation. (§ 15402.)

The trust instrument addresses revocation and amendment in paragraphs 5.1 and 5.2. Those paragraphs state as follows:

"5.1 <u>Revocation or Amendment During Grantor's Lifetime</u>. During the lifetime of JAMES DAVID TUFFT, this Trust may be amended or revoked, in whole or in part, by an instrument in writing signed by JAMES DAVID TUFFT as Grantor, and delivered to the Trustee. Upon revocation, the Trustee shall, within a reasonable period of time, deliver to JAMES DAVID TUFFT all or the designated portion of his separate property Trust assets, which shall retain its character as his separate property. The Trustee shall also account for his acts as Trustee since the prior accounting. If this instrument is revoked with respect to all or a major portion of the assets subject thereto, the Trustee shall be entitled to retain sufficient assets to reasonably secure the payment of liabilities lawfully incurred by the Trustee in the administration of the Trust, including Trustee's fees that have been earned, unless the Grantor shall indemnify the Trustee against such loss or expense.

"5.2 <u>Revocation or Amendment After Death of Deceased Spouse</u>. At any time after the death of the MARY LOUISE TUFFT, if she is the first spouse to die, and provided that the Surviving Spouse is competent, the Trust may be amended, in accordance with the provisions of the foregoing paragraph. After the death of JAMES DAVID TUFFT, or after the death of MARY LOUISE TUFFT, should she be the Surviving Spouse, the Trust shall thereafter be *irrevocable*." (Italics added, bold omitted.)

Whether the trust provisions are ambiguous is a question of law subject to independent review on appeal. (See *Colonial*, *supra*, 184 Cal.App.3d at 82.) Although Linda and Margaret reach contrary interpretations of the last sentence of paragraph 5.2,

17

based on our independent review of the trust provisions we believe the meaning of the last sentence, regarding the circumstances upon which the trust would become irrevocable, is properly determined when both sentences of paragraph 5.2 are considered together and in the context of the trust instrument as a whole. The first sentence of paragraph 5.2 provides that if Mary "is the first spouse to die," James may thereafter amend the trust. The second sentence of paragraph 5.2 contemplates two scenarios. The first scenario is if Mary is the first spouse to die, then "[a]fter the death" of James the trust is irrevocable. Under the alternative scenario, which occurred in this case according to the allegations of Linda's petition, if James dies first, then the trust is irrevocable after the death of Mary "the Surviving Spouse."

Even if the trust did not become irrevocable until after Mary's death, Linda fails to allege in her petition or identify on appeal any provision in the trust instrument that is reasonably susceptible to the interpretation that Mary had the power to revoke or amend the trust. Although the trust instrument clearly provides in paragraphs 5.1 and 5.2 that, during James's lifetime, he had the power to revoke or amend, Linda does not identify a trust provision that is reasonably susceptible to the interpretation that Mary had the power to revoke or amend between the time of James's death and her own death.

For example, Linda's petition does not contain any allegation that Mary was a settlor with respect to the trust and therefore had the power to revoke and/or modify (see §§ 15400, 15402), and we do not believe that the trust instrument is reasonably susceptible to the interpretation that Mary was a settlor who had the power to revoke and/or modify. In this regard, the "Declaration of Trust" at the beginning of the trust instrument states: "James David Tufft and Mary Louise Tufft, hereinafter referred to as 'Grantor,' 'Co-Trustees,' 'Deceased Spouse' or 'Surviving Spouse', depending upon the context, hereby declare that they now hold in trust the [Felton and Albany residential properties and stock], which is the separate property of James David Tufft . . . . Said property has been delivered to the above parties as Co-Trustees by James David Tufft as

18

Grantor, without consideration." (Some capitalization omitted.) The trust instrument further states: "Separate Property. All property being transferred to this Trust, and identified on Schedule 'A' as the Separate Property Trust Estate, is the separate property of JAMES DAVID TUFFT. It is the express intention of the parties that said property retain its character as the separate property of the undersigned Grantor unless and until title to any such property should hereafter be changed by written instrument." Although the trust instrument thereafter refers generally to "grantor" or "grantors" in various places apparently in reference to James and/or Mary, only James transferred property to the trust and only he signed the trust instrument as "Grantor" under the following language: "Certification [¶] I certify that I have read the foregoing Trust instrument and that it correctly states the terms and conditions under which the Trust Estate is to be held, managed, and disposed of by the Trustee(s). I approve this Trust instrument in all particulars." In contrast, Mary signed the trust instrument only in her capacity as a "Trustee."

Further, we are not persuaded by Linda's argument that paragraph 4.1 of the trust instrument is reasonably susceptible to the interpretation that it gave Mary "the authority to change the disposition of the entire Trust res." Paragraph 4.1 states: "Continuation of Trust. The first spouse to die shall be called the Deceased Spouse, and the living spouse shall be called the Surviving Spouse. On the Deceased Spouse's death, the Trustee shall continue to administer the Trust Estate, including any additions made to the Trust by reason of the Deceased Spouse's death, such as from the decedent's Will or life insurance policies on the decedent's life, according to the terms of the Trust with respect to the Surviving Spouse and *without distinction as to whether any property was derived from community property, separate property or quasi-community property*." (Italics added.) The italicized portion relied on by Linda is part of a sentence addressing the trustee's "continue[d] . . . administ[ration]" of the trust estate after the death of the first spouse. We do not believe the sentence is reasonably susceptible to the construction that it

19

*granted* Mary, as the surviving spouse, the power to change the disposition of James's separate property that had been transferred to the trust.

Linda also contends that Mary's purported amendment complied with the requirements for revocation under the current version of section 15401, subdivision (a)(2). Subdivision (a)(2), effective January 1, 2013, generally provides that a revocable trust may be revoked by a writing signed by the settlor "or any other person holding the power of revocation." (§ 15401, subd. (a)(2).) Assuming, without deciding, that the January 2013 version of section 15401 applies in this case,[6] Linda failed to allege any facts in her petition establishing that Mary was a "person holding the power of revocation." (*Id.*) For example, the current version of subdivision (b)(2) of section 15401 provides that a "a settlor may grant to another person, including, but not limited to, his or her spouse, a power to revoke all or part of that portion of the trust contributed by that settlor, regardless of whether that portion was separate property or community property of that settlor, and regardless of whether that power to revoke is exercisable during the lifetime of that settlor or continues after the death of that settlor, or both." However, absent from Linda's petition is any allegation that James granted Mary the power to revoke the trust. Moreover, on appeal Linda does not cite to any provision in the trust instrument that is reasonably susceptible to the interpretation that James granted Mary the power to revoke the trust.

---

[6] Linda has requested judicial notice of an analysis of Assembly Bill No. 1683 by the Senate Rules Committee, Office of Senate Floor Analysis, to support her argument that the amendment to section 15401 effective January 1, 2013 applies in this case. We grant the request for judicial notice. (See *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 46, fn. 9 [explaining that a court may take judicial notice of reports of Senate and Assembly committees]; *California School Employees Assn., Tustin Chapter No. 450 v. Tustin Unified School Dist.* (2007) 148 Cal.App.4th 510, 518 [taking judicial notice of an analysis by the Senate Rules Committee, Office of Senate Floor Analyses]). We have assumed, without deciding, that the January 1, 2013 version of section 15401 applies in this case.

20

We further observe that the " 'primary rule' " in construing a trust is to " 'ascertain and effectuate the intention of the trustor or settlor.' " (*Crook*, *supra*, 95 Cal.App.4th at p. 1206.) Here, the intent of James, as settlor, is clear from the trust instrument, and Linda's proposed construction– that Mary had the power to revoke or amend the trust after James's death – would enable Mary to defeat James's intent. The trust instrument clearly provides that after the death of James and Mary, the remaining balance is to be distributed to *James's daughters*, including Margaret, and that *Mary's daughters*, including Linda, are *not* to receive anything. In contrast, if Mary had the power to revoke and/or amend the trust after James's death, and if her purported amendment to the trust is valid, then *James's daughters* would receive *nothing* and *Mary's daughters* would be entitled to have the trust estate distributed to them.

Whether the trust provisions are ambiguous is an issue subject to our independent review. (See *Colonial*, *supra*, 184 Cal.App.3d at 82.) After independently reviewing the trust provisions identified by Linda, we determine that they are not ambiguous, and that they are not reasonably susceptible to the interpretation that Mary had the power to revoke and/or amend the trust after James's death. Such a construction of the trust instrument as urged by Linda would operate to defeat rather than effectuate the intention of James with respect to the disposition of the trust estate after the spouses had died. Further, the trust provisions identified by Linda are not reasonably susceptible to the interpretation that Mary had the power to appoint a successor trustee under the circumstances alleged in Linda's petition, where James died and Mary thereafter signed an amendment appointing Linda as sole successor trustee upon Mary's death. Based on our independent review, we determine that the probate court did not err in sustaining the demurrer to Linda's section 17200 petition, in which she sought to be appointed successor trustee and the "rights to determine all claims and rights to distribution under the trust," on the ground that Linda failed to state sufficient facts.

### c. *leave to amend*

Linda also fails to show that there is a reasonable possibility that she could cure the defects with an amendment. (*Schifando*, *supra*, 31 Cal.4th at p. 1081.) Linda indicates that she would add allegations that she is the trustee of the trust, that she is a beneficiary under the trust, that Mary was a settlor of the trust, and that the trust did not become irrevocable until after Mary's death. As we have explained, however, the trust instrument is not reasonably susceptible to the interpretation that Linda is a trustee or a beneficiary, or that Mary was a settlor with the power to revoke or modify the trust. Accordingly, we determine that the court did not abuse its discretion in denying leave to amend. (*Ibid.*)

### B. *Judgment*

Margaret prepared a proposed judgment and served a copy on Linda. The probate court filed the judgment on June 12, 2013, without any modification. The judgment states in relevant part:

"The Court, having made its Order sustaining Respondent's Margaret Elizabeth Tufft's Demurrer to the Linda A. Wright's Petition to Establish Jurisdiction, Designate Trustee, and Determine Rights of Distribution of Trust Estate, and finding good cause therefore, hereby orders, adjudges and decrees:

"1. Petitioner Linda A. Wright's claim that she is the Successor Trustee of the James and Mary Louise Tufft Living Trust dated January 2, 1997 is rejected by the Court;

"2. Petitioner Linda A. Wright has no right to determine any claims or rights to distribution under James and Mary Louise Tufft Living Trust dated January 2, 1997; [and]

"3. Respondent Margaret Elizabeth Tufft is the Successor Trustee of the James and Mary Louise Tufft Living Trust dated January 2, 1997, with the right to exercise all powers granted to the Trustee in said Trust . . . ."

On appeal, Linda contends that the three numbered paragraphs by the probate court are "affirmative findings which were never lawfully before the Court" and "far exceeded what is permitted by the law." She contends that the judgment therefore "violated [her] constitutional rights to due process under the law in that it deprived [her] the opportunity to have trial on the merits."

Margaret responds that Linda had no right to a trial on the issues of whether she was a successor trustee or whether she was entitled to distribution of the trust estate because the trust instrument was not ambiguous in those respects.

A demurrer tests the legal sufficiency of a pleading. (*Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968, 994.) "The absence of any allegation essential to a cause of action renders it vulnerable to a general demurrer. A ruling on a general demurrer is thus a method of deciding the merits of the cause of action on assumed facts without a trial. [Citation.]" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 437, fn. 4 (*Linder*).) "A judgment entered after a general demurrer has been sustained 'is a judgment on the merits to the extent that it adjudicates that the facts alleged do not constitute a cause of action, and will accordingly, be a bar to a subsequent action alleging the same facts.' " (*Crowley v. Modern Faucet Mfg. Co.* (1955) 44 Cal.2d 321, 323 (*Crowley*); accord, *Goddard v. Security Title Ins. & Guarantee Co.* (1939) 14 Cal.2d 47, 52 (*Goddard*); *Ojavan Investors, Inc. v. California Coastal Com.* (1997) 54 Cal.App.4th 373, 384.)

In this case, as we have explained, the probate court properly sustained the demurrer for failure to state sufficient facts with respect to Linda's petition in which she sought to be appointed successor trustee and the "rights to determine all claims and rights to distribution under the trust." The resulting judgment may thus be properly considered a judgment on the merits as to these issues. (*Linder*, *supra*, 23 Cal.4th at p. 437, fn. 4; *Crowley*, *supra*, 44 Cal.2d at p. 323; *Goddard*, *supra*, 14 Cal.2d at p. 52.) Consequently, the first two numbered paragraphs in the judgment – that the court rejects Linda's claim

23

she is the successor trustee and that Linda has no right to determine any claims or rights to distribution under the trust – necessarily follow from the ruling on the demurrer. We do not believe, however, that the third numbered paragraph of the judgment, which states that *Margaret* is the successor trustee with the right to exercise all powers granted to the trustee in the trust, was similarly adjudicated by way of the court's ruling on the demurrer to *Linda's* petition. In her petition, *Linda* sought to be appointed as successor trustee and to be granted the powers of that position. The record does not reflect that Margaret sought such relief by way of her *own* petition. We will order the third numbered paragraph stricken from the judgment and affirm the judgment as modified.

In view of our conclusion that the probate court did not err in sustaining the demurrer without leave to amend and that the judgment should be affirmed as modified, we do not reach Margaret's contentions concerning the legal effect of the order expunging Linda's notices of pendency of action.

## IV. DISPOSITION

The June 12, 2013 judgment is modified by striking the words "Respondent Margaret Elizabeth Tufft is the Successor Trustee of the James and Mary Louise Tufft Living Trust dated January 2, 1997, with the right to exercise all powers granted to the Trustee in said Trust," and as so modified, is affirmed. The parties shall bear their own costs on appeal.

24

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

MÁRQUEZ, J.

_____

GROVER, J.